United States District Court
Southern District of Texas
**ENTERED**
May 15, 2024
Nathan Ochsner, Clerk

IN THE UNITED STATES DISTRICT COURT
FOR THE SOUTHERN DISTRICT OF TEXAS
HOUSTON DIVISION

| | |
|---|---|
| SAM RAYBURN MUNICIPAL POWER AGENCY, § § § § | |
| Plaintiff, § | CIVIL ACTION NO. H-23-2374 |
| v. § § | |
| JASPER/VPPA SETTLEMENT TRUST, *et al.*, § § § | |
| Defendants. § | |

## MEMORANDUM AND ORDER

This long-running dispute arises out of an energy transaction arrangement known as the Cambridge Project. Sam Rayburn Municipal Power Agency (SRMPA), the Vinton Public Power Authority (VPPA), the Jasper/VPPA Settlement Trust (J/V Trust), and Entergy Louisiana, LLC, were all part of this Project. In previous litigation, the court created the following chart to describe the flow of power under the contracts involved in the Cambridge Project:



*Vinton Pub. Power Auth. v. Sam Rayburn Mun. Power Agency*, No. 20-CV-3609, 2022 WL 180990 (S.D. Tex. Jan. 20, 2022). The court further explained that:

> After the power is transmitted and distributed, the various entities then pay for the power they receive. Every entity that receives power pays for that power, and every entity that transmits or distributes power is paid for the power, but in different ways and at different times. Most of the money that is paid under the Cambridge Project is paid into a trust, called the Jasper/VPPA Settlement Trust. The Jasper/VPPA Settlement Trust originated under the NISCO Deal.[1]

*Id.* at *6. In that litigation, this court ordered the J/V Trust to distribute the funds it had received and would receive in the future in the proportions of 90.61% to SRMPA and 9.39% to VPPA.

The Nelson Industrial Steam Company (NISCO) power-generating units shut down on April 28, 2023. (Docket Entry No. 49 at 9). In the same month, Entergy Texas terminated its Cambridge Project contract with SRMPA. (*Id.*). Despite the end of these contracts, some money continued to flow. Between April 2023 and February 1, 2024, over $14 million was paid by Entergy Louisiana into the J/V Trust as part of "the sale of power from Entergy Wholesale Marketing through Sam Rayburn and Vinton Power to the industrial participants." (Docket Entry No. 78 at 24). VPPA sued Entergy Louisiana, SRMPA, and the J/V Trust in Louisiana state court to determine how to distribute the $14 million. (Docket Entry No. 64 at 8). While that suit was pending, SRMPA filed this suit, seeking a declaratory judgment that funds put into the J/V Trust after April 2023—that is, after SRMPA's involvement in the Cambridge Project ended—be distributed in the same proportions as decided in the previous litigation—90.61% to SRMPA and 9.39% to VPPA. (Docket Entry No. 1). VPPA argues that because SRMPA's involvement in the Project has ended, VPPA is entitled to 100% of the proceeds paid into the trust.

---

[1] "Under the Nisco Deal, Entergy assigned the output from Nelson 1 and 2 to Vinton Power, and in exchange, Vinton Power became the retail provider of power to three of Entergy's customers [the industrial participants]." *Id.* at *4.

SRMPA filed a motion for summary judgment before discovery on the basis that this contract dispute should be resolved by reference to the text of the contracts. (Docket Entry No. 49). VPPA opposes on the basis that summary judgment is premature. VPPA contends that there are significant factual disputes as to whether the Cambridge Project is still active and whether, despite the contracts, SRMPA has an equitable right to the proceeds. (Docket Entry No. 80). The court agrees. After reviewing the briefing, the record, the applicable law, and the information presented at the hearing, the motion for summary judgment is denied, without prejudice to refiling on a fuller record. The reasons for this ruling are set out below.

I.  **The Rule 56 Standard**

"Summary judgment is appropriate where 'the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law.'" *Springboards to Educ., Inc. v. Pharr-San Juan-Alamo Indep. Sch. Dist.*, 33 F.4th 747, 749 (5th Cir. 2022) (quoting Fed. R. Civ. P. 56(a)). "A fact is material if it might affect the outcome of the suit and a factual dispute is genuine if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Thompson v. Microsoft Corp.*, 2 F.4th 460, 467 (5th Cir. 2021) (quoting reference omitted). The moving party "always bears the initial responsibility of informing the district court of the basis for its motion[] and identifying" the record evidence "which it believes demonstrate[s] the absence of a genuine issue of material fact." *Celotex Corp. v. Catrett*, 477 U.S. 317, 323 (1986).

"When 'the non-movant bears the burden of proof at trial,' a party moving for summary judgment 'may merely point to the absence of evidence and thereby shift to the non-movant the burden of demonstrating by competent summary judgment proof that there is [a dispute] of material fact warranting trial." *MDK S.R.L. v. Proplant Inc.*, 25 F.4th 360, 368 (5th Cir. 2022)

3

(alteration in original) (quoting reference omitted). "However[,] the movant 'need not negate the elements of the nonmovant's case.'" *Terral River Serv., Inc. v. SCF Marine Inc.*, 20 F.4th 1015, 1018 (5th Cir. 2021) (quoting *Little v. Liquid Air Corp.*, 37 F.3d 1069, 1075 (5th Cir. 1994) (en banc) (per curiam)). "If 'reasonable minds could differ' on 'the import of the evidence,' a court must deny the motion." *Sanchez v. Young County*, 956 F.3d 785, 791 (5th Cir. 2020) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250–51 (1986)).

After the movant meets its Rule 56(c) burden, "the non-movant must come forward with 'specific facts' showing a genuine factual issue for trial." *Houston v. Tex. Dep't of Agric.*, 17 F.4th 576, 581 (5th Cir. 2021) (quoting references omitted). The nonmovant "must identify specific evidence in the record and articulate the 'precise manner' in which the evidence" aids their case. *Shah v. VHS San Antonio Partners, L.L.C.*, 985 F.3d 450, 453 (5th Cir. 2021) (quoting reference omitted). All reasonable inferences are drawn in the nonmovant's favor. *Loftin v. City of Prentiss*, 33 F.4th 774, 779 (5th Cir. 2022). But a nonmovant "cannot defeat summary judgment with conclusory allegations, unsubstantiated assertions, or only a scintilla of evidence." *Jones v. Gulf Coast Rest. Grp., Inc.*, 8 F.4th 363, 369 (5th Cir. 2021) (quoting reference omitted).

**II.   Analysis**

"[I]n the Fifth Circuit, courts have discretion to deny a motion for summary judgment as premature." *Barnett v. Stafford Transp. of Louisiana*, No. 20-CV-280, 2021 WL 2778281, at *1 (E.D. Tex. Mar. 12, 2021) (citing *George v. Go Frac, LLC*, No. 15-CV-943, 2016 WL 94146, at *2 (W.D. Tex. Jan. 7, 2016)); *see also Sewell v. Sewerage & Water Bd. of New Orleans*, 697 F. App'x 288, 291 (5th Cir. 2017). "Deferring a motion is a particularly appropriate step for the court to take if it believes that the summary-judgment request is premature." Wright & Miller, *Motion for Summary Judgment by Claimant*, 10 Fed. Prac. & Proc. Civ. § 2717 (4th ed.). Although Rule

56(d) of the Federal Rules of Civil Procedure also allows a court to defer or deny summary judgment when the nonmovant shows that it "cannot present facts essential to justify its opposition," VPPA has not requested relief under Rule 56(d). The court considers the prematurity of the motion for summary judgment under its discretionary power.

SRMPA's primary argument is that because the Cambridge Project terminated with the shutdown of the NISCO units, VPPA has no contract basis for its claim to the funds. (Docket Entry No. 49 at 12). SRMPA argues that after the units shut down, only one contract that was part of the Cambridge Project remained in effect, the "Long-Term Agreement for Assignment of Retail Load." (*Id.* at 11). VPPA argues that SRMPA shows that only two of the contracts in the Cambridge Project terminated in April 2023 by their own terms. (Docket Entry No. 64 at 16). VPPA argues that some of the contracts, including the Nelson Offtake Assignment, did not terminate. That Assignment states:

> The term of this Agreement (the 'Term') shall commence on the Effective Date and shall continue in effect until the earlier of (i) midnight CPT (end of hour ending 2400) on December 31, 2035, (ii) the termination of the Nelson IP Retail Load Assignment [i.e., the Vinton Power Assignment of Retail Load] or (iii) the earlier termination of this Agreement in accordance with the terms hereof (the earliest of such dates being the 'Termination Date') . . . ."

(Docket Entry No. 49-4, Ex. 12).

The court agrees that SRMPA has not shown that these termination conditions occurred. SRMPA relies on a separate contract provision that "[a]t the end of the Offtake Period, all rights, duties, obligations and responsibilities . . . shall automatically revert to EGSL without further right, claim or obligation by SRMPA." (Docket Entry No. 49 at 22). SRMPA argues that "the end of Offtake from the NISCO Units" terminated the contract and ended SRMPA's rights and obligations under that contract. (*Id.*). This argument depends on interpreting "the end of Offtake from the NISCO Units" as equivalent to the end of the Offtake Period. The contract, however,

5

states that the Offtake Period is "the period commencing at midnight CPT (beginning of hour ending 0100) on the Effective Date and continuing through and including midnight CPT (end of hour ending 2400) on the Termination Date." (Docket Entry No. 49-4, Ex. 12). The court is not convinced that SRMPA's interpretation that the contract terminated with the end of Offtake from the NISCO Units is accurate, because the definition of the Offtake Period mentions only the termination date—the express provisions of which do not rely on the end of Offtake. (The court appreciates that this sounds like some kind of coded language, but that is the result of the contract drafting rather than contract interpretation.)

SRMPA's arguments depend on whether the end of a party's performance terminates the contract. But determining the parties' performance and whether that performance met the contract obligations requires further factual information that the court does not have. SRMPA argues that because VPPA stated in its financial disclosures that, "[s]hould any of the Cambridge Project contractual arrangements be terminated, the Cambridge contracts would terminate," the presence of the remaining contracts does not save the Cambridge Project. (Docket Entry No. 49 at 11). But this is not an argument rooted in the contract text. Further discovery is required to determine whether and how that disclosure statement sheds light on whether the parties' performance satisfied the contract terms.

SRMPA's other arguments are also premature at this stage of factual development. SRMPA's argument that the distribution is required by the principles of equity, based on the value of headroom rights, (Docket Entry No. 49 at 33), is not based on the contract language, but rather on negotiations leading up to the contract and arguments made in prior litigation. As VPPA correctly points out, there is a factual dispute as to the value of the headroom rights following SRMPA's exit from the contracts, as well as the value of other consideration SRMPA previously

provided in exchange for its portion of the J/V Trust proceeds. (Docket Entry No. 80 at 5). Although SRMPA may ultimately be proven right, the present record is insufficient to decide the distribution of the remaining $14 million based on the equitable principles SRMPA invokes.

For example, under the Cambridge Project and the subsequent Order determining the split between SRMPA and VPPA, SRMPA was required to pay a $3 million annual "Reassignment Fee" in order to obtain proceeds from the J/V Trust. SRMPA has not paid the Reassignment Fee since it ended its involvement in the Project. (Docket Entry Nos. 50 at 7, 64 at 33). SRMPA argues that the Reassignment Fee was negotiated by its former counsel, Ralph Gillis, who has been convicted of fraud relating to the Cambridge Project and who was seeking to enrich himself by taking a portion of that Fee. As a result, SRMPA argues, it would be unjust and inequitable to require SRMPA to pay the Fee. (Docket Entry No. 78 at 16). This argument is not based on the contract, but on outside events requiring further discovery and briefing as to whether these issues have already been decided in other litigation.

The motion for summary judgment, (Docket Entry No. 49), is denied without prejudice as premature. SRMPA may reurge any or all of these grounds as appropriate, following discovery on the factual disputes material to determining this case.

SIGNED on May 15, 2024, at Houston, Texas.

_____
Lee H. Rosenthal
United States District Judge